NEW YORK CHEMICAL CO. v. HALLECK.

(*Common Pleas of New York City and County, Special Term.* May, 1891.)

</div>

INJUNCTION—TO PREVENT BREACH OF CONTRACT.

Defendant conveyed to plaintiff the right "in every way to introduce" a chemical preparation patented by defendant, including "the rights of the patents taken out," on condition that plaintiff should pay defendant a certain royalty, and employ him at a certain salary, so long as his services were rendered solely in plaintiff's interests, and were satisfactory, and that plaintiff would employ agents, etc. Plaintiff having failed to make the agreed payments to defendant, or to perform other of the specified conditions, defendant entered into a partnership with other persons for the manufacture of his preparation. *Held,* that an injunction to restrain defendant from revealing the secret of the preparation would be denied.

Action by the New York Chemical Company against Richard F. Halleck. Defendant moves for injunction *pendente lite* restraining defendant from obstructing the plaintiff in the use of the factory, stable, and other property now in the possession and under the control of the defendant, and revealing the secret of the formula or preparation of a certain compound called "Wash-Out," and from giving his services to any other person or persons than the plaintiff.

*Brooke & Brooke*, for plaintiff. *James P. Wiemann*, for defendant.

DALY, C. J. On January 24, 1891, the defendant conveyed to the plaintiff "the right to introduce to the public, and in every way to introduce, the preparation known as 'Wash-Out,' and also the right of the patents taken out for this preparation in the United States; also the rights applied for in Great Britain, France, and Germany, and all other foreign countries, on the following conditions." The conditions specified were that the plaintiff should pay to the defendant a certain sum per gross for every gross of the preparation which it sold; that the books of the plaintiff were to be open to his inspection the 1st day of every month; that the plaintiff should provide the necessary plant for the manufacture of the said preparation; employ defendant at a salary of $150 per month so long as his services were rendered solely in the interest of the plaintiff, and so long as his services were satisfactory to it; employ and pay the necessary traveling agents to introduce and sell the said preparation; advertise it so as to best secure its sale; guaranty to sell $20,000 worth of it the first year; and pay defendant in cash $1,000 on January 28, 1891, and $1,000 in cash on February 2d, as advance royalties. In conclusion, the agreement between the parties specified that it was "to exist for all time, so long as the contract is fully complied with." The agreement and conveyance evidently contemplate that the rights which plaintiff acquired thereunder should be exclusive. It is wholly inconsistent with the view that the defendant might or could, while the plaintiff kept faith with him, convey to any other person equal right "to introduce in every way," and to manufacture and sell and advertise, the compound so as to best secure its sale, and to employ the necessary agents to introduce and sell it. The provisions requiring the plaintiff to provide the necessary plant for its manufacture, and to employ the defendant, (the inventor of the compound,) and pay him for services to be "rendered solely in the interest of the company," indicate that the exclusive manufacture, introduction, and sale of the compound were provided for by the arrangement thus made between these parties. So that, upon the faithful performance by the plaintiff of the conditions upon which these rights depended, the defendant would be precluded from lawfully granting the same or equal rights to any other person. But the exercise of the rights in question by the plaintiff was conditioned upon its performance of the matters stipulated for in the conveyance. The conveyance itself is conditional, and conditioned upon a continuous performance of the plaintiff's obligations in respect of the payment of royalty, maintenance of the plant for manufacture, payment of defendant's salary, employment of agents, etc., as well as upon the cash payments in advance, for the agreement stipulates that it is to exist so long as it is fully performed. When either party fails to comply with it, the rights of such party under it are, by the very terms of his contract, ended. It cannot be contended that the plaintiff has complied with the conditions to be performed upon its part. The payment of $1,000 cash on January 28th, and of a like amount on February 2d, have not been made. The defendant has received from time to time on account thereof sums aggregating $1,700, and the plaintiff was in default for the balance before any of the acts on the part of defendant, complained of by plaintiff, were committed. The rent of the factory for the month of April was not paid when due, and no salary was paid to the defendant. The default of the plaintiff in re-

spect of its obligations operated to release the defendant whenever he chose to exercise his right to terminate the contract; and that he has done so is apparent from the allegations of the plaintiff upon this motion, showing that defendant has entered into a copartnership with other parties to manufacture his compound independently of the plaintiff. It is manifest that the plaintiff, not having performed its own obligations, cannot have the assistance of a court of equity to compel the defendant to perform his.

The defendant has alleged that he was induced by the fraudulent representations of the president of the plaintiff company, David P. Templeton, to enter into the contract which is the basis of the plaintiff's claim. I have not considered it necessary to inquire how far this allegation is supported by the evidence, because, if that were the only defense to this action, it would be ineffectual until defendant had restored, or offered to restore, to the plaintiff the money which he had received under the contract. That would be indispensable to effect the rescission of the contract for such fraud. But I have concluded, from the evidence, that the defendant has the right to consider the contract at an end because the plaintiff has committed a breach of it, and the continuance of his right to any benefit from it is conditioned upon faithful performance of all its parts. It does not, however, result, from so holding, that injury will result to any party because defendant is permitted to retain what he has already received under the contract. The copartnership which defendant has formed with Alpheus Gustin and Mark L. Dunning for manufacturing the defendant's compound at the factory in question is, or will be, the means of restoring to the source from which it was derived the money that defendant has so far received through the president of the plaintiff company, David P. Templeton; for the latter obtained from Mr. Gustin the money in question, and has given nothing for it. The right of defendant to enter into such copartnership, and the propriety and justice of his act, cannot, I think, be criticised. The motion to continue the injunction must be denied, and the injunction originally granted be vacated, with $10 costs.